Michael Faillace [MF-8436]
Michael Faillace & Associates, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------

ADAN ALCAIDE, ISAIAS MUÑOZ CAYZA, ISMAEL ESTRADA GALINDO, AND JUAN CARLOS ALCAIDE, *individually and on behalf of others similarly situated,*

*Plaintiffs*,

-against-

SCI CONTRACTING LLC (D/B/A SCI CONTRACTING), SPAXEL LLC (D/B/A SPAXEL), UA BUILDERS CORP. (D/B/A UA BUILDERS GROUP), STAGG GROUP LLC (D/B/A STAGG GROUP), AND KLAUDIO SELIMAJ,

*Defendants.*

-------------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b) AND RULE 23 CLASS ACTION**

**ECF Case**

Plaintiffs Adan Alcaide, Isaias Muñoz Cayza, Ismael Estrada Galindo, and Juan Carlos Alcaide, individually and on behalf of others similarly situated (collectively, “Plaintiffs”), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against SCI Contracting LLC (d/b/a SCI Contracting), Spaxel LLC (d/b/a Spaxel), UA Builders Corp. (d/b/a UA Builders Group), Stagg Group LLC (d/b/a Stagg Group), (“Defendant Corporations”), and Klaudio Selimaj (“Individual Defendant”), (collectively, “Defendants”), allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs are former employees of SCI Contracting LLC (d/b/a SCI Contracting), Spaxel LLC (d/b/a Spaxel), UA Builders Corp. (d/b/a UA Builders Group), Stagg Group LLC (d/b/a Stagg Group), and Klaudio Selimaj (collectively, "Defendants").

2. Defendants own, operate, and/or control a construction company headquartered at 125 Vernon Avenue, Yonkers, NY 10704 under the name SCI Contracting.

3. Upon information and belief, Individual Defendant Klaudio Selimaj serves or served as owner, manager, principal, or agent of Defendant Corporation and, through this corporate entity, operate or operated the Construction company as a joint or unified enterprise.

4. Plaintiffs were employees of Defendants.

5. Plaintiffs were employed as carpenters in a number of construction projects located at different location in The Bronx, including 1745 W. Farms Rd., Bronx, NY 10460 in which the general contractor was Spaxel LLC (d/b/a Spaxel), 1731 W. Farms Rd. Bronx, NY 10460 in which the general contractor was UA Builders Corp. (d/b/a UA Builders Group), and 5959 Broadway, Bronx, NY 10463 in which the general contractor was Stagg Group LLC (d/b/a Stagg Group).

6. At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation, for the hours that they worked.

7. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8. Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

9. Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

10. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

11. Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

12. Plaintiffs now bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and of all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1337 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

14. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their businesses in this district, and Plaintiffs were employed by Defendants in this district.

**THE PARTIES**

*Plaintiffs*

15. Plaintiff Adan Alcaide ("Plaintiff Adan" or "Mr. Adan") is an adult individual residing in New York County, New York. Plaintiff Adan was employed by Defendants from approximately April 2022 until on or about October 2024.

16. Plaintiff Isaias Muñoz Cayza ("Plaintiff Nunez" or "Mr. Nunez") is an adult individual residing in Westchester County, New York. Plaintiff Nunez was employed by Defendants from approximately May 2024 until on or about July 2024.

17. Plaintiff Ismael Estrada Galindo ("Plaintiff Estrada" or "Mr. Estrada") is an adult individual residing in Bronx County, New York. Plaintiff Estrada was employed by Defendants from approximately February 2024 until on or about November 2025.

18. Plaintiff Juan Carlos Alcaide ("Plaintiff Juan Carlos" or "Mr. Juan Carlos") is an adult individual residing in Westchester County, New York. Plaintiff Juan Carlos was employed by Defendants from approximately September 2023 until on or about August 2024.

19. Plaintiffs consent to being party plaintiffs pursuant to 29 U.S.C. § 216(b), and bring these claims based upon the allegations herein as representative parties of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

20. At all times relevant to this Complaint, Defendants own, operate, and/or control a Construction company headquartered at 125 Vernon Avenue, Yonkers, NY 10704 under the name SCI Contracting.

21. Upon information and belief, SCI Contracting LLC, (d/b/a SCI Contracting) is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 125 Vernon Avenue, Yonkers, New York 10704.

22. Upon information and belief, Spaxel LLC (d/b/a Spaxel), is a domestic corporations organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 228 Park Ave South, Suite #30194, New York, NY 10003.

23. Upon information and belief, UA Builders Corp. (d/b/a UA Builders Group), is a domestic corporations organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 5 W 37th St, 12th Floor, New York, NY 10018.

24. Upon information and belief, Stagg Group LLC (d/b/a Stagg Group), is a domestic corporations organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 1 Bradford Rd., Mount Vernon, NY 10553.

25. Defendant Klaudio Selimaj is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Klaudio Selimaj is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations. Defendant Klaudio Selimaj possesses or possessed operational control over Defendant Corporations, possesses or possessed an ownership interest in Defendant Corporations, and controls or controlled significant functions of Defendant Corporations. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

26. Defendants operate a construction company under the name "SCI Contracting," which performs a number of construction project in the Bronx.

27. Upon information and belief, Individual Defendant Klaudio Selimaj possesses operational control over Defendant Corporations, possesses an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations.

28. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

29. Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

30. Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are their (and all similarly situated individuals') employers within the meaning of 29 U.S.C. §§ 201 *et seq*. and the NYLL.

31. In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

32. Upon information and belief, Individual Defendant Klaudio Selimaj operates Defendant Corporation as either an alter ego of himself, and/or fail to operate Defendant Corporations as an entity legally separate and apart from himself, by, among other things:

a. failing to adhere to the corporate formalities necessary to operate Defendant Corporations as a Corporation,

b. defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c. transferring assets and debts freely as between all Defendants,

d. operating Defendant Corporations for his own benefit as the sole or majority shareholder,

e. operating Defendant Corporations for his own benefit and maintaining control over this Corporation as a closed Corporation,

f. intermingling assets and debts of his own with Defendant Corporation,

g. diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h. Other actions evincing a failure to adhere to the corporate form.

33. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of compensation in exchange for his services.

34. In each year from 2023 to 2024, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

35. In addition, upon information and belief, Defendants and/or their enterprises were directly engaged in interstate commerce. For example, numerous items that were used daily at Defendants construction companies such as cement, wood, and other tools were produced outside the state of New York.

*Individual Plaintiffs*

36. Plaintiffs are former employees of Defendants, who worked as carpenters.

37. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Adan Alcaide*

38. Plaintiff Adan was employed by Defendants from approximately April 2022 until on or about October 2024.

39. Plaintiff Adan worked as a carpenter.

40. Plaintiff Adan regularly handled goods produced in interstate commerce, such as construction equipment, cement, and other tools produced outside the state of New York.

41. Plaintiff Adan's work duties required neither discretion nor independent judgment.

42. From approximately April 2022 until on or about December 2023, Plaintiff Adan worked from approximately 8:00 a.m. until on or about 5:00 p.m. three days a week and from approximately 8:00 a.m. until on or about 8:00 p.m. two days a week (typically 51 hours per week).

43. From approximately July 2024 until on or about October 2024, Plaintiff Adan worked from approximately 8:00 a.m. until on or about 5:00 p.m. three days a week and from approximately 8:00 a.m. until on or about 8:00 p.m. two days a week (typically 51 hours per week).

44. Throughout his employment, Defendants paid Plaintiff Adan his wages by check or Zelle.

45. From approximately April 2022 until on or about October 2024, Defendants paid Plaintiff Adan $25 per hour.

46. Plaintiff Adan's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

47. Specifically, Defendants required Plaintiff Adan to work an additional three hours past his scheduled departure time two to three days a week and only paid him at straight rate.

48. In addition, Defendants did not pay Plaintiff Adan for at least two weeks of work.

49. Plaintiff Adan was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

50. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Adan regarding overtime and wages under the FLSA and NYLL.

51. Defendants did not provide Plaintiff Adan an accurate statement of wages, as

required by NYLL 195(3).

52. Defendants did not give any notice to Plaintiff Adan, in English and in Spanish (Plaintiff Adan's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

53. As a result of Defendants' failure to provide Plaintiff Adan with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

54. Defendants required Plaintiff Adan to purchase "tools of the trade" with his own funds—including harnesses, a hammer, three helmets, gloves, eye protectors and other carpentry tools.

*Plaintiff Isaias Muñoz Cayza*

55. Plaintiff Nunez was employed by Defendants from approximately May 2024 until on or about July 2024.

56. Plaintiff Nunez worked as a carpenter.

57. Plaintiff Nunez regularly handled goods produced in interstate commerce, such as construction equipment, cement, and other tools produced outside the state of New York.

58. Plaintiff Nunez's work duties required neither discretion nor independent judgment.

59. From approximately May 2024 until on or about July 2024, Plaintiff Nunez worked from approximately 7:00 a.m. until on or about 5:00 p.m. three to four days a week and from approximately 7:00 a.m. until on or about 8:00 p.m. two days a week (typically 50 to 60 hours per week).

60. Throughout his employment, Defendants paid Plaintiff Nunez his wages by check or Zelle and cash.

61. From approximately March 2024 until on or about July 2024, Defendants paid Plaintiff Nunez $25.00 per hour for some of the hours he worked each week.

62. Plaintiff Nunez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

63. Specifically, Defendants required Plaintiff Nunez to work an additional two to three hours past his scheduled departure time two to three days a week and only paid him at straight rate.

64. In addition, Defendants did not pay Plaintiff Nunez for at least four weeks of work.

65. Plaintiff Nunez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

66. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Nunez regarding overtime and wages under the FLSA and NYLL.

67. Defendants did not provide Plaintiff Nunez an accurate statement of wages, as required by NYLL 195(3).

68. Defendants did not give any notice to Plaintiff Nunez, in English and in Spanish (Plaintiff Nunez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

69. As a result of Defendants' failure to provide Plaintiff Nunez with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

70. Defendants required Plaintiff Nunez to purchase "tools of the trade" with his own funds—including harnesses, a hammer, three helmets, gloves, eye protectors and other carpentry tools.

*Plaintiff Ismael Estrada Galindo*

71. Plaintiff Estrada was employed by Defendants from approximately February 2024 until on or about November 2025.

72. Plaintiff Estrada worked as a water proofer, roofer and scaffolding attendant.

73. Plaintiff Estrada regularly handled goods produced in interstate commerce, such as construction equipment, cement, and other tools produced outside the state of New York.

74. Plaintiff Estrada' work duties required neither discretion nor independent judgment.

75. From approximately February 2024 until on or about November 2025, Plaintiff Estrada worked from approximately 7:00 a.m. until on or about 8:00 p.m. five days a week (typically 65 hours per week).

76. Throughout his employment, Defendants paid Plaintiff Estrada his wages by check or Zelle.

77. From approximately September 2023 until on or about October 2024, Defendants paid Plaintiff Estrada $34.00 per hour for some of the hours he worked each week.

78. Plaintiff Estrada's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

79. Specifically, Defendants required Plaintiff Estrada to work an additional three hours past his scheduled departure time every day and only paid him at straight rate.

80. In addition, Defendants did not pay Plaintiff Estrada for at least three weeks of work.

81. Plaintiff Estrada was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

82. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Estrada regarding overtime and wages under the FLSA and NYLL.

83. Defendants did not provide Plaintiff Estrada an accurate statement of wages, as required by NYLL 195(3).

84. Defendants did not give any notice to Plaintiff Estrada, in English and in Spanish (Plaintiff Estrada's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

85. As a result of Defendants' failure to provide Plaintiff Estrada with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

86. Defendants required Plaintiff Estrada to purchase "tools of the trade" with his own funds—including harnesses, a hammer, three helmets, gloves, eye protectors and other carpentry tools.

*Plaintiff Juan Carlos Alcaide*

87. Plaintiff Juan Carlos was employed by Defendants from approximately September 2023 until on or about August 2024.

88. Plaintiff Juan Carlos worked as a carpenter.

89. Plaintiff Juan Carlos regularly handled goods produced in interstate commerce, such as construction equipment, cement, and other tools produced outside the state of New York.

90. Plaintiff Juan Carlos' work duties required neither discretion nor independent judgment.

91. From approximately September 2023 until on or about October 2024, Plaintiff Juan Carlos worked from approximately 7:00 a.m. until on or about 5:00 p.m. three days a week and from approximately 7:00 a.m. until on or about 7:00 p.m. two to three days a week (typically 54 to 66 hours per week).

92. Throughout his employment, Defendants paid Plaintiff Juan Carlos his wages by check or Zelle.

93. From approximately September 2023 until on or about October 2024, Defendants paid Plaintiff Juan Carlos $25.50 per hour for some of the hours he worked each week.

94. Plaintiff Juan Carlos's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

95. Specifically, Defendants required Plaintiff Juan Carlos to work an additional two to three hours past his scheduled departure time two to three days and only paid him at straight rate for the additional time he worked.

96. In addition, Defendants did not pay Plaintiff Juan Carlos for at least two weeks of work.

97. Plaintiff Juan Carlos was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

98. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Juan Carlos regarding overtime and wages under the FLSA and NYLL.

99. Defendants did not provide Plaintiff Juan Carlos an accurate statement of wages, as required by NYLL 195(3).

100. Defendants did not give any notice to Plaintiff Juan Carlos, in English and in Spanish (Plaintiff Juan Carlos's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

101. As a result of Defendants' failure to provide Plaintiff Juan Carlos with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

102. Defendants required Plaintiff Juan Carlos to purchase "tools of the trade" with his own funds—including harnesses, a hammer, three helmets, gloves, eye protectors and other carpentry tools.

*Defendants' General Employment Practices*

103. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs, and all similarly situated employees, to work in excess of 40 hours per week without paying them the proper minimum wage and overtime compensation, as required by federal and state laws.

104. As part of their regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL by not paying Plaintiffs the wages required under these laws.

105. Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling far below the required minimum wage rate.

106. Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

107. Plaintiffs were victims of Defendants' common policy and practices violating their rights under the FLSA and New York Labor Law by not paying them the wages they were owed for the hours they had worked.

108. Defendants did not provide Plaintiffs with any document or other statement accurately accounting for their actual hours worked, and setting forth rate of minimum wage and overtime wage.

109. Plaintiffs were paid their wages entirely by check or Zelle and cash.

110. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

111. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs worked, and to avoid paying Plaintiffs properly for their full hours worked.

112. Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

113. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former construction workers.

114. Defendants also failed to post at the workplace, or otherwise provide to Plaintiffs, the required postings or notices regarding the applicable wage and hour requirements of the FLSA and NYLL.

115. Defendants failed to provide Plaintiffs with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL §195(3).

116. Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

117. As a result of Defendants' failure to provide Plaintiffs and other employees a Notice of Pay Rate or accurate wage statements with each payment of their wages, Plaintiffs and other employees were prevented from: (i) comparing their rate of pay to their hours worked; (ii) realizing that they were underpaid; and (iii) advocating for themselves and/or taking appropriate action to obtain the payments due to them.

**FLSA COLLECTIVE ACTION CLAIMS**

118. Plaintiffs bring this FLSA minimum wage, overtime compensation and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA and Rule 23 Class members"), *i.e.*, persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

119. At all relevant times, Plaintiffs, and other members of the FLSA and Rule 23 Class who are and/or were similarly situated, have had substantially similar job requirements and pay provisions.

120. At all relevant times, Plaintiffs, and other members of the FLSA and Rule 23 Class who are and/or were similarly situated, were subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the minimum wage and overtime at a one and one-half times their regular rates for work in excess of forty (40) hours per workweek.

121. At all relevant times, Plaintiffs, and other members of the FLSA and Rule 23 Class who are and/or were similarly situated, were subject to Defendants' willful failure to keep records required by the FLSA.

122. The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

**FEDERAL RULE 23 CLASS ACTION ALLEGATIONS**

123. Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

124. Plaintiffs bring their New York Labor Law minimum wage, overtime, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

125. The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

126. There are questions of law and fact common to the Class including:

a) What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b) What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c) What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d) Whether Defendants failed and/or refused to pay Plaintiffs the prevailing wages and overtime at the premium rate within the meaning of the New York Labor Law;

e) Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

f) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

g) What are the common conditions of employment and in the workplace, such as record-keeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

127. The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols, and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

128. The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by

attorneys who are experienced and competent in both class action litigation and employment litigation.

129. The common questions of law and fact predominate over questions affecting only individual members.

130. A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

131. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

132. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

133. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

134. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

135. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

136. Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

137. Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

138. Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

139. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

140. Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

141. Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

142. Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

143. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

144. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire

Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

145. Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

146. Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

147. Plaintiffs were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

148. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

149. Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

150. Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

151. Plaintiffs were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW**

152. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

153. Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof,

whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

154. As a result of Defendants' failure to furnish an accurate wage notice to Plaintiffs, Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

155. Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW

156. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

157. With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

158. As a result of Defendants' failure to furnish accurate statements to Plaintiffs, Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia,

159. Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**

**RECOVERY OF EQUIPMENT COSTS**

160. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

161. Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

162. Plaintiffs were damaged in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**

**VIOLATION OF THE TIMELY PAYMENT PROVISIONS OF THE NEW YORK LABOR LAW**

163. Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

164. Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

165. Defendants are liable to each Plaintiff in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

166. Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

167. Upon information and belief, Defendants created an implicit contract with Plaintiffs (and the FLSA and Rule 23 class members by paying them hourly wages that were much higher than the minimum wage for their work as carpenters.

168. Defendants breached the implicit contracts by failing to pay Plaintiffs (and the FLSA and Rule 23 class members) the higher than minimum wages for their work as carpenters.

169. As a result of its breach of the implicit contracts, Defendants are liable to Plaintiffs (and the FLSA and Rule 23 class members) for the value of the higher than minimum wages, in an amount to be determined at trial.

## <u>TENTH CAUSE OF ACTION</u>

## UNJUST ENRICHMENT

170. Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

171. Plaintiffs (and the FLSA and Rule 23 class members) conferred a benefit upon Defendants through the provision of labor as carpenters for a variety of construction projects.

172. Defendants received the benefit of Plaintiffs' labor during the time period alleged in this complaint.

173. Plaintiffs expected rightful compensation for their labor, at least at the wage rate Defendants had implicitly contracted to pay and applicable overtime rates.

174. When Defendants entered into the implicit contracts at the construction projects, they agreed, as a matter of fact or by operation of law, to pay plaintiffs the agreed upon higher than minimum wages and applicable overtime rates to Plaintiffs (and the FLSA and Rule 23 class members).

175. Defendant would be unjustly enriched if allowed to retain that benefit without compensating the Plaintiffs (and the FLSA and Rule 23 class members).

176. As a result of this failure to pay at the implicitly contracted minimum wages, Defendants willfully and unjustly enriched for work and services performed by Plaintiffs (and the FLSA and Rule 23 class members).

177. That equity and good conscience require that the Defendants pay Plaintiffs (and the FLSA and Rule 23 class members) their *quantum meruit,* in an amount to be determined at trial.

**ELEVENTH CAUSE OF ACTION**

**QUANTUM MERUIT**

178. Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

179. Plaintiffs (and the FLSA and Rule 23 class members) performed numerous and valuable services at the request and for the benefit of Defendants. Plaintiffs (and the FLSA and Rule 23 class members) were not paid the reasonable value of those services.

180. As a result, Defendants are liable to Plaintiffs (and the FLSA and Rule 23 class members) for the reasonable value of those services, plus interest, in an amount to be determined at trial.

**TWELFTH CAUSE OF ACTION**

**GENERAL CONTRACTOR LIABILITY UNDER NEW YORK LABOR LAW § 198-e**

**(Against Spaxel LLC, UA Builders Corp., and Stagg Group LLC)**

181. Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

182. Upon information and belief, Defendants Spaxel LLC (d/b/a Spaxel), UA Builders Corp. (d/b/a UA Builders Group), and Stagg Group LLC (d/b/a Stagg Group) each entered into a construction contract with an owner for construction work at, respectively, 1745 West Farms Road, Bronx, New York 10460; 1731 West Farms Road, Bronx, New York 10460; and 5959 Broadway,

Bronx, New York 10463, and each was a contractor within the meaning of NYLL § 198-e(8)(b).

183. Upon information and belief, SCI Contracting LLC (d/b/a SCI Contracting) performed construction work as a subcontractor, directly or at a lower tier, under, by, or for the respective contractors or their subcontractors at the foregoing projects within the meaning of NYLL § 198-e(8)(d).

184. Plaintiffs performed construction labor for SCI Contracting LLC, including work at the construction projects identified herein, and were not paid all wages owed for their labor, including straight-time wages and overtime compensation, as alleged above. The precise allocation of each Plaintiff's work and unpaid wages among the respective projects will be determined through discovery.

185. Under NYLL § 198-e(1) and (5), each contractor is jointly and severally liable with SCI Contracting LLC for qualifying debts and remedies under NYLL § 198 arising from labor performed for its covered construction project, to the extent provided by law.

186. Plaintiffs gave each contractor written notice of the alleged violations pursuant to NYLL § 198-e(9), at least ten business days elapsed thereafter, and the violations were not corrected.]

187. Plaintiffs seek judgment against each contractor for the qualifying unpaid wages attributable to labor performed under its construction contract within the period permitted by NYLL § 198-e(9), together with applicable remedies under NYLL § 198, attorneys' fees, interest, and costs to the extent recoverable by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a) Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b) Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(c) Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(d) Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule 23 Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e) Declaring that Defendants' violations of the provisions of the FLSA have been willful as to Plaintiffs and the FLSA and Rule 23 Class members;

(f) Awarding Plaintiffs and the FLSA and Rule 23 Class members damages for the amount of unpaid minimum wages, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g) Awarding Plaintiffs and the FLSA and Rule 23 Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h) Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the FLSA and Rule 23 Class members;

(i) Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the FLSA and the Rule 23 Class members;

(j) Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(k) Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs', (and the FLSA and Rule 23 class members) compensation, hours, wages, and any deductions or credits taken against wages;

(l) Awarding Plaintiffs and members of the FLSA and Rule 23 Class damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as applicable;

(m) Awarding Plaintiffs and members of the FLSA and Rule 23 Class damages for Defendants' violation of the NYLL TIMELINESS, notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n) Awarding Plaintiffs and members of the FLSA and Rule 23 Class liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage AND overtime compensation, shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o) Awarding Plaintiffs and the FLSA and Rule 23 Class members pre-judgment and post-judgment interest as applicable;

(p) Awarding Plaintiffs and the FLSA and Rule 23 Class Members the expenses incurred in this action, including costs and attorneys' fees;

(q) Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r) Awarding Plaintiffs judgment against Spaxel LLC, UA Builders Corp., and Stagg Group LLC under NYLL § 198-e for qualifying unpaid wages and other recoverable relief attributable to work performed under each contractor's respective construction contract;

(s) All such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
October 17, 2026

MICHAEL FAILLACE & ASSOCIATES, P.C.

By: /s/ *Michael Faillace*

Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

Michael Faillace & Associates, P.C.
Employment and Litigation Attorneys
60 E 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Michael@faillacelaw.com

---

BY HAND

TO: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre: Adan Alcaide Maldonado

Signature / Firma: ______________________________

Legal Representative / Abogado: Michael Faillace & Associares, P.C.

Date / Fecha: September 21, 2026

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Michael@faillacelaw.com


---

BY HAND

TO: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre: Ismael Estrada Galindo

Signature / Firma: ______________________

Legal Representative / Abogado: Michael Faillace & Associares, P.C.

Date / Fecha: September 21, 2026

Michael Faillace & Associates, P.C.
Employment and Litigation Attorneys
60 E 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Michael@faillacelaw.com

---

BY HAND

TO: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre: Juan Carlos Alcaide Maldonado

Signature / Firma: ______________________

Legal Representative / Abogado: Michael Faillace & Associares, P.C.

Date / Fecha: September 21, 2026